**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICOLE CIACCIO,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No.  2:23-cv-2863** |
| **v.** | : | |
| | : | |
| **UPPER SAUCON TOWNSHIP** | : | |
| **CHIEF THOMAS NICOLETTI** | : | |
| **POLICE LIEUTANANT  "FNU" FRITZ** | : | |
| **POLICE OFFICER ALONZO DOE** | : | |
| **and** | : | |
| **POLICE OFFICER HANK ROE,** | : | |
| **Defendants.** | : | |

**COMPLAINT**

**I.  PRELIMINARY STATEMENT**

The circumstances of this case strike at one of the fundamental freedoms enjoyed under the Constitution – the right to be left alone by the police.  It is clearly established that the Fourth Amendment to the United Stated Constitution protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. The " 'very core' " of this guarantee is " 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " *Florida v. Jardines* , 569 U.S. 1 (2013).  It has also be clearly established by the United States Supreme Court that Law Enforcement Officers may enter private property without a warrant if no criminal activity is suspected only when exigent circumstances exist such as to 'render emergency assistance to an injured occupant or to protect an occupant from imminent injury.' *Kentucky v. King* , 563 U.S. 452, 460, 470, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011).  Furthermore, it is clearly established that police may not affect an arrest

without a warrant or probable cause.  *United States v. Santana*, 427 U.S. 38 (1976).

More than two years prior to the circumstances giving rise to this action,  the United States Supreme Court clearly established that in the absence of non-exigent circumstances, a warrantless entry into a home a subsequent seizure violate the Fourth Amendment. *Caniglia v. Strom*, 141 S. Ct. 1596 (2021).  In addition, *Caniglia* held that there was a Second Amendment violation because of the seizure of a firearm without probable cause, warrant or exigent circumstances.

This is an action for an award of damages, declaratory and injunctive relief, attorney's fees and other relief on behalf of Nicole Ciaccio who was seized when Upper Saucon Police Officers "Alonzo Doe" and "Hank Doe" barricaded her in her home by blocking the front door and later under the aegis of Defendant Chief Thomas Nicoletti, having other officers surround the home to prevent her from  leaving by other means. Defendant Officers later physically seized her by violently dragging her out of her front door and holding her in restraints on her front stoop wearing only a T-Shirt and thin leggings in cold February weather.  Once Ms Ciaccio was under restraint, Defendant Officers refused to release her until she agreed that they could enter the foyer of her home, and then searched the entire home and seized lawfully owned property.  Defendant Officers and Defendant Lieutenant Fritz thereafter transported her for a psychological evaluation without any cause or justification, resulting in her being seized for another eleven hours, during which no examination or evaluation was conducted, and after which she was released without any restriction.

At the time that the Defendants first seized her, they had no reasonable belief, and

in fact had contrary information, that Ms Ciaccio had committed any crime, nor was in need of any assistance. Rather, Defendants have claimed that their actions were justified by a policy in place within the Upper Saucon Township police that provided for "wellness checks."  As set forth herein,  however, the Officers, and by their radio transmissions, Upper Saucon Township Police Department officials, including but not limited to Chief Nicoletti and Lieutenant Fritz, knew prior to each escalating seizure of her person and property set forth herein that Ms Ciaccio was not in need of assistance, and that the information claimed to justify the "wellness check" was incorrect.

This action is brought under 42 U.S.C. § 1983 and Pennsylvania common law.

## II. <u>JURISDICTION AND VENUE</u>

1.  The original jurisdiction and venue of this Court is invoked in this District pursuant to Title 42 U.S.C.  §§ 1983, 28 U.S.C. §1331 and 1391, 2201, 2202, 1343 and the claim is substantively based on and the Second and Fourth Amendments to the United States Constitution as made applicable to the States under the Due Process Clause of the Fourth Amendment, and as enforceable under 42 U.S.C. § 1983, *et seq*.

2.  The Supplemental Jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. §1367, to consider Plaintiff's claim arising under Pennsylvania common law.

3.  Venue is proper in the Eastern District of Pennsylvania in that some or all of the events complained of herein occurred in Lehigh County, Pennsylvania, and/or some or all of the Defendants herein reside or have their principal place of business within the boundaries of this District.

### III. **PARTIES**

4.  Plaintiff Nicole Ciaccio is an adult female citizen and resident of the Commonwealth of Pennsylvania, residing in Coopersburg, Lehigh County, Pennsylvania.

5.  Defendant, Upper Saucon Township is a political subdivision of the County of Lehigh within the Commonwealth of Pennsylvania, empowered to establish, regulate and control its employees, including but not limited to police and other public safety personnel.

6.  Defendant, Police Chief Thomas Nicoletti  (hereinafter "Chief Nicoletti"), is an adult male citizen and resident of the Commonwealth of Pennsylvania.

7.  Chief Nicoletti is currently serving in his capacity as Chief of Police for Upper Saucon Township  and is responsible for the formulation and/or implementation of practices, policies, and procedures, as well as the day to day operation and overseeing the performance of Police Officers and other employees of the Police Department.

8.  At all times relevant hereto, Chief Nicoletti was acting within the scope of his duties and authority, under color or title of state or other public law or ordinance.

9.  At all times relevant hereto, Chief Nicoletti was a final decision-maker over matters concerning the conduct, supervision and discipline of police officers.

10. Defendant, Police Lieutenant "FNU" Fritz (hereinafter "Lieutenant Fritz"), is an adult male citizen and resident of the Commonwealth of Pennsylvania.

11. Lieutenant Fritz is currently serving in his capacity as Police Lieutenant for Upper

Saucon Township  acting under color of state law, and subject to the practices, policies, and procedures of the Upper Saucon Police Department.

12. At all times relevant hereto, Lieutenant Fritz was acting within the scope of his duties and authority, under color or title of state or other public law or ordinance.

13. Defendant, Police Officer  Alonzo Doe[1] (hereinafter "Officer Doe"), is an adult male citizen and resident of the Commonwealth of Pennsylvania.

14. Officer Doe is currently serving in his capacity as Police Officer for Upper  Saucon Township  acting under color of state law, and subject to the practices, policies, and procedures of the Upper Saucon Police Department.

15. At all times relevant hereto, Officer Doe was acting within the scope of his duties and authority, under color or title of state or other public law or ordinance.

16. Defendant, Police Officer  Harry Roe (hereinafter "Officer Roe"), is an adult male citizen and resident of the Commonwealth of Pennsylvania.

17. Officer Roe is currently serving in his capacity as Police Officer for Upper  Saucon Township  acting under color of state law, and subject to the practices, policies, and procedures of the Upper Saucon Police Department.

18. At all times relevant hereto, Officer Roe was acting within the scope of his duties and authority, under color or title of state or other public law or ordinance.

19. At all times relevant hereto, Defendant Upper Saucon Township acted by and/or failed to act by and through the conduct of its employees, including but not limited

---

[1] Defendants Officer "Alonzo Doe" and "Harry Roe" are named as aliases because the two officers cannot be identified by any markings on their uniforms and Ms Ciaccio does not recall them introducing themselves by name.

to Chief Nicoletti, Lieutenant Fritz, Officer Doe and Officer Roe, all acting within the scope and course of their employment.

20. At all relevant times herein, Defendants knew, or had reason to know, of the actions and inaction alleged herein and/or has personally participated in some of said actions complained of herein and are ultimately responsible for same.

## IV.   <u>STATEMENT OF THE CASE</u>

21. All of the foregoing allegations and averments are incorporated herein by reference as if full set forth herein.

22. At all times material hereto, Ms Ciaccio was a person with a disability because of a serious orthopaedic medical condition.

23. As a result of this medical condition, Ms Ciaccio is significantly restricted in her ability to walk and climb stairs.

24. Ms Ciaccio is currently scheduled for a hip replacement on her right leg and core compression procedure on her left leg to attempt to alleviate the signs and symptoms of her disabling medical condition.

25. The nature and extent of Ms Ciaccio's disability from being able to walk and use stairs was well known to Defendants Chief Nicoletti, Lieutenant Fritz and Officers Doe and Roe because of other encounters with Ms Ciaccio.

26. On or about February 8, 2023, Ms Ciaccio texted a friend about difficulties she was having that morning related to her medical condition.

27. Because of a typographical error or "autocorrect" the text stated "I think I just shot myself."

28. Understandably alarmed, the friend called 9-1-1, which in turn dispatched two Police Officers from the Upper Saucon Police Department, Officers Doe and Roe.

29. Although Coopersburg has its own Police Department, Plaintiff believes and therefore avers that Upper Saucon police were dispatched pursuant to a mutual aid agreement between Upper Saucon Township and Coopersburg Borough.

30. Ms Ciaccio lives in an attached townhome community, with common walls on each side of her home.

31. Upon arriving at the scene, Officers Doe and Roe encountered Ms Ciaccio's next door neighbor, and learned that there had not been any gunshots.

32. Officer Doe continuously banged on Ms Ciaccio's door with some implement.

33. Ms Ciaccio has a "Ring" video doorbell which captured all of the events referred to herein either with video, or only with sound, as set forth below.

34. Ms Ciaccio responded using the intercom feature of the doorbell.

35. Initially, Officer Doe expressed confusion as to why he was there, stating that he believed that Ms Ciaccio had called 9-1-1.

36. Ms Ciaccio informed Officer Doe that she had not called 9-1-1, and confirmed that she need not need assistance and was not injured.

37. Officers Doe and Roe insisted that Ms Ciaccio come to the door stating "I need to see you," and similar statements.

38. Neither Police Officers Doe nor Roe informed Ms Ciaccio that anyone had reported that she may have shot herself.

39. Ms Ciaccio repeatedly denied permission for the officers to enter her home, and

repeatedly told them that she was not in need of any assistance.

40. Ms Ciaccio also reminded Officers Doe and Roe that she was not able to come to the door because she was disabled, and reiterated that she was not injured and did not need assistance.

41. At about the same time, Officers Doe and Roe learned through a radio communication that the original informant, Ms Ciaccio's friend, had called back to say that he had misunderstood the text message, and that Ms Ciaccio had not in fact meant to say that she "shot herself."

42. At this point in time, Officers Doe and Roe knew that there had not been a gunshot, that Ms Ciaccio was not injured and did not need their assistance, and that the original information that they were given was incorrect.

43. From this time forward, Officers Doe and Roe were not faced with any exigent circumstances that would have justified a seizure of Ms Ciaccio's person, and any reasonable Police Officer faced with the same circumstance would have known that no entry or seizure was permitted under the Fourth Amendment.

44. At no time during this encounter did Ms Ciaccio make any statement that any reasonable police officer could have consider a threat to them, the public or herself.

45. However, rather than withdrawing, Officer Roe moved to a position away from the front door, and cowered behind Ms Ciaccio's car, parked in the driveway.

46. Officer Doe continued to insist that Ms Ciaccio come to the door, despite knowing that it would be physically difficult for her to do so, and for no good reason.

47. Officer Doe also informed Ms Ciaccio that "we're not going anywhere."

48. At this point, Defendants Doe and Roe effected a seizure of Ms Ciaccio's person without probable cause or exigent circumstances, in that she was not free to leave or avoid further encounter with Defendants.

49. Any claim that the Defendant Officers may assert that they continued to believe that Ms Ciaccio had suffered a gunshot wound (despite there being no evidence of a gunshot and Ms Ciaccio's statements to the contrary) is contradicted by their failure to call for EMS or any other person or entity who could have administered aid.

50. Officers Doe and Roe then called for instructions, and for back-up.

51. Remarkably, despite any statement that could be considered probable cause or exigent circumstances, Defendant Nicoletti, upon information and belief, authorized Defendants Doe and Roe to enter Ms Ciaccio's home.

52. For reasons unknown to Plaintff, Defendants Doe and Roe did not enter the home, but awaited the arrival of other officers.

53. Other officers eventually arrived, including Defendant Lieutenant Fritz, and set up a cordon around Ms Ciaccio's home (front and back), effecting a seizure of Ms Ciaccio's person by preventing her from any means of ingress and egress.

54. At some point during this two hour event, Officer Doe affixed a sticker or piece of paper over the lens of the Ring video doorbell.[2]

---

[2] From this point onward until the officer entered the home, as set forth below, the recording is limited to audio, including the circumstances under which Ms Ciaccio taken into physical custody by Defendants Doe and Roe. However, upon information and belief, the encounter inside Ms Ciaccio's home was recorded by Defendant Officers' body cameras.

55. Defendants and the other police officers then went quiet for a period of time, and hid their whereabouts.

56. Thinking that Defendants had left, Ms Ciaccio struggled down the stairs and cracked open the door to see what was on the camera.  This is when Defendants Doe and Roe struck.

57. Having hidden themselves from view, Officers Doe and Roe physically seized Ms Ciaccio and dragged her out of her front door.

58. At this time, Ms Ciaccio was wearing a T-Shirt, thin leggings, with no undergarments, sock or shoes.

59. The temperature outside was approximately 35°F.

60. Officers Doe and Roe immediately placed Ms Ciaccio in restraints.

61. In the process of dragging Ms Ciaccio through the door and placing her in restraints, Ms Ciaccio's head and face were smashed into the door, and the waist cord on her leggings came untied, allowing her leggings to begin to come off.

62. At this time, it was obvious that Ms Ciaccio had not suffered a gunshot wound, confirming all of the information that they had gathered to that point.

63. Defendant Lieutanant Fritz was also able to observe that Ms Ciaccio was not injured, had not suffered a gunshot wound, and was not in need of assistance.

64. Rather than ordering Defendants Roe and Doe to immediately release Ms Ciaccio from physical and mechanical restraints, Lieutenant Doe permitted Defendants Doe and Roe to maintain Ms Ciaccio in custody.

65. However, rather than removing any restraints and allowing Ms Ciaccio to return

10

to her home, Defendants held her, now freezing from the air temperature, on her door step, and only agreed to let her go inside if they could enter her home.

66. Rather than freeze to death, Ms Ciaccio allowed Defendants to enter the downstair foyer.

67. However, Defendants did not limit their movements to the foyer and began to search the home, allegedly to find a firearm, which they eventually found in an area remote from where they were then holding Ms Ciaccio.

68. This entry into her home and the search thereof was without warrant or probable cause, and not conducted in any exigent circumstance.

69. Despite the fact that Ms Ciaccio legally owned the firearm in question, and it was obvious to anyone, let alone trained law enforcement officers, that Ms Ciaccio had not inflicted any wound on herself nor was the firearm in physical proximity, Defendants seized the firearm.

70. Because of the location and circumstances of the firearm, Defendant's search for and seizure of the firearm cannot be justified as a search for their own safety.

71. This constituted an unreasonable, warrantless search and seizure.

72. A reasonable police officer under the circumstances would have observed that the firearm was unloaded and in unfired condition, further confirming that they were acting in a non-exigent situation, and therefore in violation of the Fourth Amendment.

73. Defendants continued to maintain the seizure of Ms Ciaccio's person within her home for more than two hours for no reason that was apparent at the time.

74. At some point an unidentified woman arrived in an unmarked vehicle, and Officers Doe and Roe insisted that Ms Ciaccio leave with her.

75. When Ms Ciaccio refused, Defendants Fritz, Doe and Roe informed Ms Ciaccio that they were requiring her to go to a hospital, despite the fact that Ms Ciaccio was did not need or desire medical treatment.

76. Defendants Doe and Roe threatened to institute involuntary commitment proceedings if Ms Ciaccio did not accompany the unidentified woman.

77. Ms Ciaccio was ultimately taken into the custody of Defendant Lieutenant Fritz.

78. The video had been restored by this point, and Ms Ciaccio is seen struggling to walk on level ground because of her disability.

79. Ms Ciaccio was thereafter transported against her will to Cedar Crest Hospital, where she was held for an additional 11 hours until she was released without restrictions.

80. During this time, Ms Ciaccio was not examined, interviewed or evaluated by any medical personnel.

81. In fact, the only hospital employee that Ms Ciaccio met with was someone who came to discharge her.

82. In total, Defendants exercised, or caused to be exercised by others, control and dominion of Ms Ciaccio for approximately thirteen hours without probable cause, exigent circumstances or other justification.

83. Thereafter, Ms Ciaccio made a complaint to Upper Saucon Township about the actions of their police that day through counsel.

84. As a direct result of the Defendants' conduct, Plaintiff was deprived of the liberties, freedoms and protection of the laws guaranteed under the United States Constitution,  including but not limited to her protected right to be free from bodily restraint and punishment under the Fourth Amendment to the United Stated Constitution, as made applicable to the States and their political subdivisions by the Fourteenth Amendment.

85. As a direct result of the Defendants' conduct, Plaintiff has suffered physical injury, pain and suffering, and continues to suffer severe emotional, psychological and physical distress.

86. At all times material hereto, Defendants acted pursuant to the official policies and practices of the Upper Saucon Township.

87. In addition,  a final policy and decision-maker for the policies and practices of ther police in Upper Saucon Township, Chief Nicoletti created policies and procedures in violation of the Fourth Amendment which were clearly established at the time of the seizures as set forth above, and was personally involved in the supervision of Officers Doe and Roe during their seizure of Ms Ciaccio and her property.

## V.    CAUSES OF ACTION

**COUNT I**
**PLAINTIFF**
**v.**
**DEFENDANTS CHIEF NICOLETTI, LIEUTENANT FRITZ,**
**OFFICER DOE AND OFFICER ROE**
**VIOLATIONS OF 42 U.S.C. § 1983 (FOURTH AMENDMENT)**

88. Paragraphs 1 through 87 inclusive, are incorporated by reference as if fully set forth

at length herein.

89. The Defendants acted in concert with each other acted under color of law, and violated the rights of the Plaintiff by depriving her of her constitutionally protected right to be free from bodily restraint and punishment under the Fourth Amendment to the United Stated Constitution, in that Plaintiff was subjected to seizure of her person, including but not limited to:

   a. physical restraint and battery;

   b. In the unreasonable and unprivileged use of authority and use of excessive force;

   c. In the intentional or negligent infliction of emotional distress upon the Plaintiff, designed or calculated to punish the Plaintiff;

   d. In the development, implementation, and carrying out of a policy, practice or procedure designed to allow the unreasonable use of authority and use of excessive force in deprivation of constitutional rights of citizens, such as the Plaintiff;

   e. In failing to develop, implement  and carry out a policy proscribing the use of force and impairing the right to be safe and secure in their persons and property;

   f. In the development, implementation, and the carrying out of a policy which posed a threat to the law abiding citizens within Defendant Upper Saucon Township's jurisdiction;

   g. In condoning and conducting what amounted to an unreasonable use of force in violation of the Constitutional rights of the Plaintiff;

90.   As a direct and proximate result of the aforesaid actions and omissions of all Defendants, the Plaintiff has suffered the following injuries and losses and is

entitled to the following damages:

    a.  loss of the use, benefit and enjoyment of life and personal freedom of movement and association;

    b.  physical and mental pain and suffering and anguish, and embarrassment and humiliation;

    c.  loss of valuable and inalienable rights to be free from illegal imprisonment, free from loss of freedom of association, free from false arrest and malicious prosecution, as well as free from loss of personal privacy;

    d.  loss of income and future earning capacity;

    e.  loss of reputation;

    f.  punitive damages which are justified by the outlandish and outrageous conduct, actions, and omissions of one or more of the Defendants as aforesaid;

    g.  attorney's fees and costs to defend against the criminal action; and

    h.  medical expenses for care and treatment.

## COUNT II
## PLAINTIFF
### v.
## DEFENDANTS CHIEF NICOLETTI, OFFICER DOE AND OFFICER ROE
## <u>VIOLATIONS OF 42 U.S.C. § 1983 (SECOND AMENDMENT)</u>

91. Paragraphs 1 through 90 inclusive, are incorporated by reference as if fully set forth at length herein.

92. The Defendants acted in concert with each other acted under color of law, and violated the rights of the Plaintiff by depriving her of her constitutionally protected right to keep and bear arms under the Second Amendment to the United Stated

Constitution, in that Plaintiff was subjected to seizure of her lawfully owned and. Possessed firearm within her home, as clearly established by *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and *District of Columbia v. Heller*, 554 U.S. 570 (2008).

93. Furthermore, the seizure does not derive from any historical tradition of firearm regulation, and is therefore in violation of the Second Amendment, which was clearly established at the time of the seizure.  *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. ____ (2022).

**COUNT III**
**PLAINTIFF**
**v.**
**DEFENDANT UPPER SAUCON TOWNSHIP**
**VIOLATON OF 42 U.S.C. 1983**
**(MONELL LIABILITY)**

94. Paragraphs 1 through 93 inclusive, are incorporated by reference as if fully set forth at length herein.

95. Defendant Upper Saucon Township acted under color of law, and violated the rights of the Plaintiff by depriving her of her constitutionally protected right to be free from bodily restraint and punishment under the Fourth Amendment to the United Stated Constitution, in that Plaintiff was subjected to seizure of her person, including but not limited to:

    a. In the development, implementation, and carrying out of a policy, practice or procedure designed to allow the unreasonable use of authority and use of excessive force in deprivation of constitutional rights of citizens, such as the Plaintiff;

b. In failing to develop, implement  and carry out a policy proscribing the use of force and impairing the right to be safe and secure in their persons and property;

c. In the development, implementation, and the carrying out of a policy which posed a threat to the constitutional rights of law abiding citizens;

d. In condoning and conducting what amounted to an unreasonable use of force in violation of the Constitutional rights of the Plaintiff;

96.     As a direct and proximate result of the aforesaid actions and omissions of all Defendants, the Plaintiff has suffered the following injuries and losses and is entitled to the following damages:

a. loss of the use, benefit and enjoyment of life and personal freedom of movement and association;

b. physical and mental pain and suffering and anguish, and embarrassment and humiliation;

c. loss of valuable and inalienable rights to be free from illegal imprisonment, free from loss of freedom of association, free from false arrest and malicious prosecution, as well as free from loss of personal and familial privacy;

d. loss of income and future earning capacity;

e. loss of reputation;

f. punitive damages which are justified by the outlandish and outrageous conduct, actions, and omissions of one or more of the Defendants as aforesaid;

g. attorney's fees and costs to defend against the criminal action; and

h. medical expenses for care and treatment.

**COUNT IV**
**PLAINTIFF**
**v.**
**DEFENDANTS DOE AND ROE**
**ASSAULT**

97. Paragraphs 1 through 96 inclusive, are incorporated by reference as if fully set forth at length herein.

98. The conduct of Defendants Doe and Roe proximately caused Plaintiff reasonable apprehension of an imminent battery.

99. Defendants Doe and Roe had the apparent present opportunity to commit a battery.

100.     The aforementioned constituted an assault under the law of the Commonwealth of Pennsylvania.

**COUNT V**
**PLAINTIFF**
**v.**
**DEFENDANTS DOE AND ROE**
**BATTERY**

101.     Paragraphs 1 through 100 inclusive, are incorporated by reference as if fully set forth at length herein.

102.     The offensive and unwanted touching of Plaintiff by Defendants Doe and Roe constituted a battery under the law of the Commonwealth of Pennsylvania.

**COUNT VI**
**PLAINTIFF**
**v.**

**DEFENDANTS CHIEF NICOLETTI, LIEUTENANT FRITZ, DOE AND ROE**
**FALSE ARREST AND IMPRISONMENT**

103.     Paragraphs 1 through 102 inclusive, are incorporated by reference as if fully set forth at length herein.

104.     The actions and conduct of the Defendants as described hereinbefore constitutes a false arrest because the arrest of the Plaintiff on February 8, 2023, was accomplished without probable cause and without the Defendants having privilege to arrest, because the Defendants abused their normal privilege to arrest and not for a proper law enforcement purpose.

105.     At all times material hereto, Defendant Chief Nicoletti directed the actions of Defendants Doe and Roe.

106.      As a direct and proximate result of the aforesaid conduct, actions, and omissions of all Defendants, the Plaintiff has suffered the  injuries and losses and is entitled to the damages set forth above.

**COUNT VII**
**PLAINTIFF**
**v.**

**DEFENDANTS CHIEF NICOLETTI, LIEUTENANT FRITZ, DOE AND ROE**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

107.     Paragraphs 1 through 106 inclusive, are incorporated by reference as if fully set forth at length herein.

108.     The actions of Defendants in intentionally engaging in the aforementioned

19

conduct caused Plaintiff to suffer physical injury resulting in severe emotional distress.

109.     The actions of Defendants as aforesaid, were deliberate, reckless, malicious and outrageous and thus constituted an intentional infliction of severe emotional distress.

110.     The above-stated conduct of Defendants constitutes extreme and outrageous conduct.

111.     At all times material hereto, Defendant Chief Nicoletti directed the actions of Defendants Doe and Roe.

112.      As a direct result of Defendants' intentional, reckless, extreme, and outrageous conduct Plaintiff has suffered severe emotional distress, humiliation, loss of self esteem, and pain and suffering.

### STATEMENT OF FACTS JUSTIFYING THE IMPOSITION OF PUNITIVE DAMAGES AGAINST DEFENDANTS CHIEF NICOLETTI, LIEUTENANT FRITZ, DOE AND ROE

113.     Paragraphs 1 through 112 inclusive, are incorporated by reference as if fully set forth at length herein.

114.     At all times relevant hereto, Defendant Chief Nicoletti knew or should have known that the aforesaid pattern of conduct was in violation of the law.

115.     At all times material hereto, a reasonable law enforcement officer would have known that the entry into the home of a person without probable cause and in the absence of exigent circumstances, and the seizure of persons and property

therein was prohibited by the Fourth Amendment as clearly established by the United States Supreme Court in *inter alia*, *Caniglia* more than two years before the incidents set forth above.

116.    At all times material hereto, a reasonable law enforcement officer would have known that the seizure of a firearm from the home of a person without probable cause and in the absence of exigent circumstances was prohibited by the Second Amendment as clearly established by the United States Supreme Court in *inter alia*, *McDonald, Heller* and *Bruen* before the incidents set forth above.

117.    At all times relevant hereto, Defendants acted willfully, wantonly, recklessly and with an outrageous disregard and indifference to the rights, safety and well being of Plaintiff.

118.    By interfering with her federally protected rights under the Fourth Amendment to the United States Constitution in outrageous disregard and reckless indifference to the rights, safety and well being of Plaintiff.

## V.  PRAYER FOR RELIEF

119.    Plaintiff repeats the allegations of paragraphs 1 through 118 of this Complaint as if set forth at length herein.

WHEREFORE, Plaintiff requests this Court to enter judgment in her favor and against Defendants and requests that this Court:

a.  Exercise jurisdiction over her claims;

b.  Award traditional tort remedies such as compensatory damages, pain and suffering, physical and emotional distress, economic loss, time loss, severe

emotional trauma, and such punitive damages as may be available under law;

c. Issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects;

d. Order Defendants pay to Plaintiff pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

e. Order Defendants Chief Nicoletti, and Officers Doe and Roe, pay to Plaintiff punitive damages under § 1983 and Pennsylvania Common Law, as allowed by law;

f. The Court award such other relief as is deemed just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury.

**HAHALIS & KOUNOUPIS, P.C.**


By: */s/    David  L. Deratzian*
    David L. Deratzian, Esquire
    20 East Broad Street
    Bethlehem, PA  18018
    (610) 865-2608
    David@Employmentlaw-lv.com
    Attorneys for Plaintiff, Nicole Ciaccio

Dated: July 27, 2023

22